(58 South. 886.)

No. 18,967.

McQUEEN et al. v. FLASDICK–BLACK LAND & LUMBER CO., Limited.

(May 20, 1912.  On Application for Rehearing, June 19, 1912.)

*(Syllabus by the Court.)*

1. TRIAL (§ 139*)—TAKING CASE FROM JURY —NONSUIT.

Where plaintiff fails to make his case certain, a judgment of nonsuit will be ordered.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 332, 333, 338–341, 365; Dec. Dig. § 139.*]

2. PUBLIC LANDS (§ 152*) — DISPOSAL BY STATES—PATENT.

Patents issued by the state of Louisiana for land sold and located from January, 1861, to October 14, 1864, should be issued in the name of the purchaser.  Section 12, Act 104 of 1871.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 438; Dec. Dig. § 152.*]

3. PUBLIC LANDS (§ 152*)—DISPOSAL BY STATES—PATENT.

A patent issued to George Colmer "as legal representative of Denis Lary and John Cottar, who purchased per certificates Nos. 5,451 and 5,452," is indefinite and uncertain, and insufficient upon which to base a judgment declaring George Colmer to be the real owner of the property mentioned in the patent.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 438; Dec. Dig. § 152.*]

4. PUBLIC LANDS (§ 111*)—DISPOSAL BY UNITED STATES—PATENT CERTIFICATE AND PATENT.

The Commissioner of the Land Office of the United States recommends a formula, which has been generally observed, of issuing a patent certificate, and even the patent, to the original grantee, or his legal representative: and this formula, "or his legal representative," has been held to embrace representatives of the original grantee in the land by contract, such as assignee, or grantee, as well as by operation of law, and leaves the question open to inquiry in a court of justice as to the party to whom the certificate, patent, or confirmation shall inure.  Hogan v. Page, 2 Wall. 607, 17 L. Ed. 854.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 310; Dec. Dig. § 111.*]

5. TRIAL (§ 139*)—PROCEEDINGS—NONSUIT.

Where plaintiff proceeds under Act No. 38 of 1908, "to establish title to real estate, where none of the parties are in actual possession," and neither plaintiff nor defendant show title in himself, a judgment of nonsuit will be ordered.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 332, 333, 338–341, 365; Dec. Dig. § 139.*]

Appeal from Twenty-Fifth Judicial District Court, Parish of Tangipahoa; George J. Woodside, Acting Judge.

Action by Mrs. M. W. McQueen and others against the Flasdick-Black Land & Lumber Company, Limited.  From the judgment, both parties appeal.  Reversed and remanded.

W. S. Rownd and Clay Elliott, for appellants.  B. B. Purser, for appellee.

SOMMERVILLE, J.  Plaintiffs proceed under Act No. 38 of 1908, which authorizes an action "to establish title to real estate, where none of the parties are in actual possession," contradictorily with defendant, whom they assert claims title in itself.

[3] Plaintiffs rely upon the following patent issued by the state of Louisiana:

"No. 2,026.  To All to Whom These Presents shall Come, Greeting:

"Whereas, George Colmer, of the parish of Livingston, in the state of Louisiana, as legal representative of Denis Lary and John Cottar, who purchased per certificates Nos. 5,451 & 5,452, dated at Greensburg, July 31st, 1862, the following land, to wit:  The east ½ of section No. eighteen (18), in township No. four (4) south, of range No. seven (7) east, in the Greensburg land district, containing three hundred & twenty-two 88/100 acres, 322 88/100 acres, according to the official plat of the survey of said lands in the state land office.

"Now know ye, that the state of Louisiana, in consideration of the premises and in conformity with law, in such cases made and provided, has given, granted and sold, and by these presents does give, grant and sell, unto the said George Colmer, and to his heirs the above described land to have and to hold the same together with all the rights, titles and privileges thereunto belonging unto the said George Colmer, and to his heirs and assigns forever.

"In testimony whereof, I, William Pitt Kellogg, Governor of the state of Louisiana, have caused these letters to be made patent, and the seal of the state land office to be hereunto affixed.

"Given under my hand, at the city of New Orleans, on the twenty-fourth day of March,

in the year of our Lord one thousand eight hundred and seventy-five, and of the independence of the United States the ninety-ninth.

"By the Governor:    W. P. Kellogg. [L. S.]
"Record of patent, Vol. 18, page 79.
                              "John Ray, Register."

And the following indorsement on the reverse of said patent:

"Truly recorded Aug. 31, 1909, in conveyance book 56, page 667, Records of Tangipahoa Parish, Louisiana.
"Louis F. Lefevre, Dy. Clk. & Recorder."

The language used by the register in the patent just referred to is so ambiguous that we cannot come to a conclusion as to what he meant by the words "as legal representative of Denis Lary and John Cottar." We are asked to presume that the register had sufficient authority before him at the time that he issued the patent to show that George Colmer was the legal representative of Denis Lary and John Cottar. We might, perhaps, presume that such was the case, yet we would, nevertheless, be at a loss to understand the capacity in which George Colmer acted as the legal representative of these two persons named. He could hardly have been the heir of both of them, or the legatee of both of them, if they are dead. We do not know whether he acted as their executor, or receiver, or transferee, or agent, or in any specific representative capacity. Until this fact is shown positively, we cannot say whether this patent was issued in the name of George Colmer in a purely representative capacity, or as assignee, or as transferee, or otherwise.

[4] It appears that, under the advice of the Attorney General of the United States, the Commissioner of the Land Office issues certificates and even patents to land from the federal government to the original grantee "or his legal representative," and that such formula has been held to embrace representatives of the original grantee of the land by contract, such as assignee or grantee as well as by operation of law. And the matter is left open to inquiry in a court of justice as to whom the certificate, patent, or confirmation should inure. Hogan v. Page, 2 Wall. 607, 17 L. Ed. 854.

[1] Plaintiff Mrs. McQueen alleges herself to be the universal legatee of George Colmer, and therefore the owner of the land in question. It devolves upon her to show that George Colmer held this land in his own right as owner, and not as the representative of Denis Lary and John Cottar. This she has not done. A judgment of nonsuit will have to be entered in the case.

[2] The patent recites that Denis Lary and John Cottar purchased on July 31, 1862, and that certificates were issued to them numbered 5,451 and 5,452. Under these circumstances, the patents should have been issued in their respective names. Section 12 of Act 104 of 1871 provides:

"That all sales and locations of public lands made by this state from the first of January, 1861, to the fourteenth of October, 1864, which are shown by the records of the register's office, be and the same are hereby confirmed, and patent shall, on demand, be issued in the name of the person, and be delivered to the party surrendering the proof of entry or location, or on making, to the satisfaction of the register, proof of loss."

The patent is irregular from every point of view, and it is insufficient to predicate a judgment of court upon, without sufficient evidence to make its terms certain.

Plaintiffs also offer a copy of a private act of sale from Samitha Manning to George Colmer of the same land on March 7, 1863, which act appears to have been duly recorded June 21, 1863. But this act has not been proved. And, if George Colmer acquired this property from Samitha Manning in 1863, he could hardly have been "the legal representative of Denis Lary and John Cottar," owners of the land, in 1875, at the time of the issuance of the patent No. 2,026. There is nothing to show from whom Samitha Manning acquired title. She could hardly have acquired from Lary or Cottar or both. Lary

appears to have purchased the entire north half of section 18 from the state, and Cottar the south half of said section. According to the testimony offered by defendant, Lary sold his entire north half of the section to William A. Chambers, November 10, 1862; and on the same date John Cottar sold the whole of his south half of the section to William A. Chambers. If these two latter private acts are proved to be true, then Lary and Cottar had no title to transfer either to Samitha Manning, or subsequently to George Colmer, as their legal representative.

It would appear that defendant claims title to the whole of section 18, having acquired the north half of said section from Lary, and the south half of the same section from Cottar by mesne conveyances in 1862. Plaintiffs are here claiming only the east half of said section. They are not claiming the west half of said section; and we are at a loss to comprehend why patent No. 2,026 was not issued for the whole of section 18, as Lary and Cottar appear to have purchased the whole section under the certificates numbered 5,451 and 5,452.

[5] Defendant in its answer claims to own the property in dispute as vendee of the Flasdick-Rixman Lumber Company, Limited, and alleged that it attaches the title to its answer. It also alleges that the Flasdick-Rixman Lumber Company, Limited, acquired from Martin Haney, and that these two deeds are of record. They are not found in the transcript, and they have not been offered in evidence by the defendant, according to the note of evidence filed. Defendant has not proved title in itself, and it is therefore not entitled to judgment.

It is therefore ordered, adjudged, and decreed that there be judgment annulling, avoiding, and reversing the judgment appealed from, and that there be a judgment against plaintiffs and in favor of defendant, dismissing plaintiffs' demand as in case of nonsuit, the costs of the trial court to be paid by plaintiffs, and those of appeal by the appellee.

## On Application for Rehearing.

BREAUX, C. J. The application of plaintiffs is granted. The former judgment of the court is set aside. The judgment appealed from is annulled, avoided, and reversed, and we now order that this case be remanded to the trial court for the purpose of trying the case de novo.

Defendant's application for rehearing is not granted, because of the action on plaintiffs' application.